## City of Allentown v. International Association of Fire Fighters

C.P. of Lehigh County, no. 2007-C-3514.

*John Marchetto,* for petitioner.
*Quintes D. Taglioli,* for respondent.

FORD, *J.,* September 17, 2008—Before the court are the "petition to review arbitration award" filed on October 3, 2007, and the "amended petition to review arbitration award" filed on November 13, 2007, by the City of Allentown. In these petitions, City asserts that an arbitration panel acted without jurisdiction and beyond its authority in a decision made on September 5, 2007, regarding the rate of pay for specialist fire fighters. An argument was conducted on the petitions on June 12, 2008. For the reasons that follow, we deny the City's petitions and order the arbitration panel to immediately decide the issue of pay for the specialists.

## PROCEDURAL HISTORY

City and the International Association of Fire Fighters, Local 302 (Union) are parties to a collective bargaining

agreement (CBA). The CBA resulted from a December 22, 2004 arbitration "award" issued by a panel composed of Thomas Anewalt, Esquire, John S. Stribula and Alan Symonette, Esquire. The panel acted pursuant to Act 111 (43 P.S. §§217.1-217.10), which governs collective bargaining between municipalities and fire fighters. The CBA went into effect on January 1, 2005, and expires on December 31, 2011.

During the collective bargaining process, City and Union could not agree on a rate of pay for specialist fire fighters. The parties addressed this stalemate by including section 16 in the CBA. Under section 16, the parties were ordered to form a "Rank Differential Special Teams" committee. The committee was to be composed of representatives from the City and the Union, who would examine the duties of the specialists in question. The committee had to reduce its findings to writing by September 1, 2005. If, after reviewing the committee report, the parties could still not reach a resolution, the arbitration panel would make a final determination as to the specialists' pay. According to section 16, the jurisdiction of the arbitration panel would expire on December 2, 2005.

For various reasons, the committee mandated by section 16 of the CBA was not formed. On December 30, 2005, after the jurisdiction of the arbitration panel had expired according to section 16, the City and the Union entered into a "memorandum of understanding" (MOU). In section 10 of the MOU, the parties agreed that the committee required under section 16 would still be formed. The agreement stated that the committee would complete its work by September 1, 2006. In section 11

of the MOU, the parties agreed that they were not empowered to extend the jurisdiction of the original arbitration panel. However, section 11 further provided that any dispute arising out of the interpretation of section 16 of the CBA would be arbitrated by a newly constituted panel comprised of Anewalt, Stribula and Symonette, the members of the original panel.

The parties once again failed to form the section 16 committee. On September 13, 2006, the Union sent a letter to Mayor Edward Pawlowski of the City. The letter, after citing the original arbitration award and the MOU, explained that the parties had reached an impasse as to the means to resolve the issue of pay for the specialist fire fighters. The Union demanded arbitration.

On April 30, 2007, the arbitration panel conducted a hearing to resolve the dispute. At the hearing, City argued that the panel lacked jurisdiction to hear the dispute and to supplement the original arbitration award. City further contended that the Union failed to follow the grievance process detailed in the original CBA prior to seeking arbitration. The panel rejected both of these arguments. The panel then ordered that the parties form the committee required in section 16 of the CBA. The committee was to complete its investigation by September 1, 2007. The panel indicated that, if the parties could not agree to terms regarding specialists' pay by the time the committee completed its report, the arbitration panel itself would decide the issue on September 10, 2007.

On September 5, 2007, Arbitrator Symonette, acting for a majority of the arbitration panel, reduced to writing this award stemming from the April 30, 2007 arbitration

hearing. City challenges this award through the present petitions. Due to this challenge by the City, the Rank Differential Special Teams committee again failed to form.

## DISCUSSION AND CONCLUSIONS OF LAW

City asks us to set aside the arbitration order of September 5, 2007. It claims that the arbitration panel lacked the jurisdiction to decide the matter. Specifically, City claims that the panel's jurisdiction expired on December 2, 2005, according to the terms of section 16 of the CBA. City also argues that the panel lacked the power to add additional terms to the CBA. Finally, City contends that Union wrongfully sought arbitration without exhausting the grievance process established by the original CBA.

City previously argued each of the aforementioned points in front of the arbitration panel on April 30, 2007. In making its decision, the panel considered the terms of the CBA and the MOU. It found some of the terms of the two agreements contradictory, but it attempted to reconcile the two documents.

In cases involving Act 111, the court exercises a narrow certiorari scope of review. *Pennsylvania State Police v. Pennsylvania State Troopers Association (Trooper James Betancourt)*, 540 Pa. 66, 79, 656 A.2d 83, 89-90 (1995). The court can review only "(1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *Id.*

The standard of review on these four topics is plenary in most circumstances, but is one of extreme deference

to the arbitrators in cases where the resolution of the issues depends upon fact-finding or interpretation of the collective bargaining agreement. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5,* 932 A.2d 274, 280 (Pa. Commw. 2007). The court "is bound by the arbitrator's determination of these matters even though [it] may find them to be incorrect." *Id.*

The arbitrators in this case interpreted the terms of the CBA and the MOU in deciding whether they possessed the jurisdiction to decide the dispute, whether they had the authority to order a remedy, and whether Union followed the proper procedure in demanding arbitration. Because the arbitrators engaged in interpretation of the CBA, the law mandates that we give the arbitrators' final decision extreme deference. Therefore, it is unnecessary for the court to determine whether the panel's conclusions were legally accurate. The arbitration order of April 30, 2007, is valid.

The Pennsylvania Supreme Court has commented on the importance of consistency and good faith in collective bargaining.

"To permit a public employer to secure an advantage in the bargaining process by agreeing to a term and subsequently avoid compliance by belatedly asserting that term's illegality is . . . inimical to the integrity of the bargaining process and undermines the harmonious relationship it was designed to foster." *Fraternal Order of Police, E.B. Jermyn Lodge No. 2, by Tolan v. Hickey,* 499 Pa. 194, 198, 452 A.2d 1005, 1007 (1982). "[T]he statutorily mandated obligation to bargain in good faith is not met by permitting the governmental employer to avoid

the performance of a term by questioning its legality after having received the advantages that flowed from the term's acceptance." *Id.* at 199, 452 A.2d at 1008.

Here, City voluntarily entered into the MOU with the Union. In the MOU, City agreed that the period for allowing the section 16 committee to be formed would be extended. City further agreed with the Union, in a rather inventive way by both, that the original Act 111 arbitrators would resolve any disagreements related to the committee and interpretations of section 16. After the parties failed to assemble the committee, Union, in accord with the MOU, called for arbitration.

City, instead of abiding by the terms of the MOU which it signed, claimed the agreement did not grant the arbitration panel jurisdiction to hear the dispute. Additionally, City argued that Union failed to follow proper grievance procedures by demanding arbitration, even though the demand adhered to the conditions of the MOU. These arguments contradict City's written agreement. We simply hold City to the terms of its agreement found in the MOU.

We are mindful of the prolonged nature of this dispute between City and Union. There is a need for finality on the issue of pay for the specialists. The arbitration award of September 5, 2007, seems to indicate that, if the parties failed to agree on specialists' pay after the committee report was completed on September 1, 2007, the arbitration panel would decide the question itself at a hearing on September 10, 2007. That date has passed and no agreement has been reached regarding the pay for the specialists. Accordingly, we order the arbitration

panel to decide this matter without the formation of a Rank Differential Special Teams committee. This directive is consistent with the parties' agreement and it finally will bring an end to this dispute.